1818.

KIMBERLY
v.
SELLS.

---

KIMBERLY *against* SELLS and others.

Where there is a *general demurrer* to the whole bill, filed for discovery and relief, and the plaintiff is entitled to an answer to any part of the bill, the demurrer will be overruled.

A *bona fide* purchaser, in possession of an estate, is entitled to a discovery of the grounds on which his title is sought to be impeached by the defendants, who had revived a judgment against the person from whom the plaintiff derived his title, and which he alleged had been satisfied, and had issued execution, under which the sheriff had levied on the estate, and advertised it for sale.

BILL stated, that *John Bedient and Walter Hubbel,* who were partners in trade, owned lots 38, 39, and 42,

June 29th. and
September 28th.

in *Gold Street*, in the city of *New-York*. That *W. H.* died on the 12th of *September*, 1803, intestate, seised of a moiety of these lots, leaving a widow and two sons, (defendants.) That under proceedings in partition in the Supreme Court, under the act relative to partition, the lots were sold at auction, on the 30th of *August*, 1804, and *John Bedient* became the purchaser. That *J. B.* who sued for the partition, as tenant in common of a moiety, stated in his petition, that the widow had her dower, and each of the sons one fourth of the lots. The sale was made by commissioners under the order of the court, and was confirmed by the court. That the widow, on the 3d of *November*, 1804, released her dower. That *J. B.* being so seised of the entire fee, on the 9th of *December*, 1805, executed a mortgage to *Ezekiel Robins*, of lot No. 38, to secure the payment of 2,500 dollars; and on the 13th of *March*, 1806, executed a mortgage to *Stephen B. Munn*, of lots 39 and 42, to secure the payment of 4,000 dollars; and, afterwards, on the 8th of *April*, 1807, sold the three lots at auction, subject to the mortgages, to *Ezekiel Robins*, for 7,793 dollars. That on the 20th of *June*, 1807, *Ezekiel Robins* executed a mortgage on lots 39 and 42, to *Rem Martense*, to secure the payment of 2,500 dollars, and on the 9th of *December*, 1807, sold and conveyed all the three lots, for 6,300 dollars, to *Timothy Savage*, subject to the mortgage to *R. Martense*; that *Savage* and his wife, on the 18th of *April*, 1808, mortgaged part of the premises to *Stephen B. Munn* and three other persons, to secured the sum of 3,874 dollars, and 56 cents; and, on the 9th of *September*, 1811, sold lot No. 42 to *Wm. Knapp*, who agreed to pay half the money due on the mortgage from *Robins* to *Martense*. That on the 7th of *March*, 1815, the plaintiff purchased of *Savage*, lots 38, and 39, for 7,000 dollars, subject to the two mortgages, and the plaintiff paid to *Munn*, who had become solely interested 'in the mortgage to him and others, 4,559 dollars, and 93 cents, and took an assign-

ment of that mortgage; and that on the 10th of *June*, 1815, *John Bedient and his wife,* mortgaged lot 42 to the plaintiff for 1,000 dollars, and the mortgage was on the same day duly registered. That the plaintiff, after the purchase, took possession of lots 38 and 39, and remained possessed of his mortgage on lot 42.

The bill further stated, that *John Sells,* after the sale of the three lots to *Robins,* as above mentioned, recovered two judgments against *John Bedient* for partnership debts; and not obtaining satisfaction of *John Bedient,* he filed a bill against the widow and children of *Hubbel,* and *Bedient,* and the administrators of *Hubbel,* to have his debt satisfied out of that estate, and the same was satisfied out of the estate of *Hubbel;* and an order of this court was obtained, upon petition of the representatives of *Hubbel,* directing the two judgments to be assigned to them. That these judgments being revived by *scire facias,* in the name of *Sells,* administrator of *Hubbel,* but under direction of the widow and sons of *Hubbel,* and *Bedient* having been discharged under the insolvent act, these representatives and his assignees (defendants,) combining to injure the plaintiff, and impeach his title to the said lots, have caused writs of *fieri facias* to be issued at law, in the name of *Sells,* on the judgments so revived, against the lands whereof *J. Bedient* was seised the 9th of *May,* and the 24th of *October,* 1807, by virtue of which executions, the sheriff had levied on lots 39 and 42, and advertised them for sale; the defendants pretending that there had been paid out of the estate of *W. Hubbel* more than its just proportion of the partnership debts, and that the whole of what had been so paid, ought to be refunded, and that the lands of which *Bedient* was seised at the time of the judgments, are, notwithstanding his assignment and discharge under the insolvent act, liable to contribute a moiety, if not the whole of the judgments in favour of *Sells;* that *Bedient* was seised of the premises at the time of the judgments, and of his

1818.

KIMBERLY
v.
SELLS.

discharge; and that the sales to *Robins* by *Bedient* were fraudulent, and the mortgages to *Robins* and *Munn*, also fraudulent, or were kept on foot by fraud, &c. The plaintiff insisted that the judgments had been satisfied and ought to be discharged; and not to be made use of by the representatives of *Hubbel.* That to entitle those representatives to any recourse upon the judgments, they ought, by an account to be taken in the premises, establish a balance to be due from *Bedient* to *Hubbel ;* and that, if any such balance should be proved, they ought to look to *Bedient* for contribution of his proportion, and come in with his creditors for a rateable proportion.

The bill charged, that the sale to *Robins* was *bona fide*, and for a valuable consideration, and that the mortgages were *bona fide ;* but that if they were otherwise, the plaintiff had no knowledge thereof, and was a *bona fide* purchaser, without any notice, belief, or suspicion of fraud ; and that his title cannot, therefore, be impeached.

That, although the plaintiff is advised that his title cannot be defeated by the threatened sale under the judgments, yet it may involve him in law suits, and greatly impede his use and disposition of the property. That, being a *bona fide* purchaser without notice, he is entitled to a discovery of the grounds on which his title is sought to be impeached, before such sale takes place, and has a right to come into this court to have his title quieted and established. Prayer, accordingly, for a discovery by the representatives of *W. H.*, for general relief, and an injunction. The injunction was issued the 29th of *July*, 1817.

There was *a general demurrer* to the bill, by the representatives of *Hubbel.*

June 29th.

*S. Jones*, jun., for the plaintiff.

*Burr*, for the defendants.

THE CHANCELLOR. The demurrer in this case is general, and goes to the whole bill. If the plaintiff be entitled, either to the discovery or the relief, then the demurrer, by going to the whole bill, must be overruled, for if void in part, it is void *in toto*. The doctrine on this point was settled in the Court of Errors, in 1798 and 1799. (*Le Roy* v. *Veeder*, 1 *Johns. Cas.* 423. *Laight* v. *Morgan*, 1 *Johns. Cas.* 429.)

The plaintiff claims and possesses certain houses and lots, as a *bona fide* purchaser and mortgagee for a valuable consideration, without notice or suspicion of any defect of title, and he seeks a discovery of the grounds upon which some of the defendants are proceeding to sell that property, by execution at law against *John Bedient*. This claim to a discovery, rests on the fact of his being such a purchaser, in possession, under a title deduced from *Bedient* prior to the judgments upon which the defendants are proceeding, and that *Bedient* was since regularly discharged under the insolvent act, and that the sale intended would expose him to expense, and injure the character of his title.

There is much equity in the call upon the defendants to disclose the grounds of their claim ; for if they are permitted to sell while that is doubtful and unknown, who would buy? Probably, no person would be induced to bid, but on mere speculation, or for a nominal sum. If the plaintiff was duly apprized of the claim, and on what it rested, he might be induced to pay the demand under the judgments, in order to save himself from total loss. But neither he, nor any other person, can exercise their judgments with any discretion on the subject, so long as this new claim of the defendants is not known or understood. The discovery seems to be necessary to render the sale beneficial to the parties concerned, and to prevent injurious speculations upon the property. The plaintiff is admitted, by the demurrer, to be an innocent purchaser.

1818.

KIMBERLY
v.
SELLS.

*September 28th.*

for a valuable consideration, without notice; and he has pretensions to the discovery which *Bedient*, or any party to the original transaction, cannot advance. The question, at present, is not on the trial of title. It is only for a discovery of the nature and grounds of that title, and the discovery may, perhaps, satisfy the plaintiff of its goodness and validity, or it may present a case of legal title to be tried and established at law, before relief can be obtained here.

This case does not appear to come within those decisions which have refused such a discovery. The plaintiff is not a mere stranger, seeking, by a fishing bill, the discovery of another's title, nor a rival claimant standing only on equal ground. The cases of *Adderley* v. *Sparrow*, (*Hil.* 1779. *Reddesdale's Tr.* 154.) and of *Buden* v. *Dove*, (2 *Vesey*, 445.) are very briefly reported, without any detail of facts; and they have, probably, no application to the special circumstances of this case, in which a particular equitable claim to discovery is shown from the character of the plaintiff, as a *bona fide* purchaser and possessor, and the proceeding of the defendants in attempting to sell the land of the plaintiff as the land of another.

The case of *Metcalf* v. *Harvey*, (1 *Vesey*, 248.) fully authorizes the present bill. In that case the bill was not only that there might be an interpleader, but also a discovery of the defendants title to the possession of an estate; and it contained a prayer for an injunction to stay proceedings in ejectment on the part of the defendant. As to the prayer for the injunction, the Chancellor observed, that "The question came to this, whether any person in possession of an estate as tenant, or otherwise, may not bring a bill to discover the title of a person bringing an ejectment against him, to have it set out and seen, and he was of opinion he might, to enable him to make a defence in ejectment." In that case, the defendant demurred to the whole bill for discovery as well as relief,

and as the plaintiff was held to be entitled to the discovery, the demurrer was overruled.

It is not necessary, at present, that we should go the whole length of this decision, but it warrants, and more than warrants, the bill in this case. So, in a much later case, (*Weller* v. *Smeaton*, 1 *Cox*, 102.) the bill stated the plaintiff to be lessee of a mill, and that the defendant had erected works on the water above, which obstructed the mill, and the prayer was, that the plaintiff might be quieted by injunction. There was a demurrer to the relief, but the case states that "a full discovery was obtained."

Without, therefore, giving any opinion, at present, as to the relief, I conclude that the plaintiff is entitled to an answer to the bill, and the demurrer is, consequently, overruled.

Demurrer overruled.