## CANNON *vs.* McNAB AND THE EASTERN BANK.

[BILL IN EQUITY FOR ACCOUNT, &C.]

1. *Bank, violation of charter by circulating notes not payable on demand; what contract does not vitiate.*—The violation of its charter by an incorporated bank, in circulating as currency notes or bills not payable on demand, does not vitiate a contract made by the bank with other parties involving the circulation of such notes or bills.

2. *Contracts involving circulation of Confederate currency; when not void.* Although a loan of Confederate currency is not a sufficient consideration for a promise to pay money, contracts for the sale and purchase of property, involving its use and circulation, are not void.

3. *Contract of sale; what held to be a mortgage.*—A contract purporting to be a sale, by the terms of which the vendee is to sell the property, and out of the proceeds of the sale pay an antecedent debt of the vendor, with interest and expenses, any excess to be returned to the vendor, and any deficiency to be made good by him, is in effect a mortgage.

4. *Bill for discovery; when not without equity.*—A bill in chancery for a discovery and account of property disposed of under such a contract, is not without equity.

5. *Same; what jurisdiction not defeated by.*—The change of the law of evidence which allows the parties to a suit to be examined as witnesses, does not take away the jurisdiction of chancery to compel a discovery.

APPEAL from Chancery Court of Barbour and Henry, Heard before Hon. B. B. McCRAW.

The facts are sufficiently stated in the opinion.

PUGH & BAKER, and SAM'L F. RICE, for appellant.
SHORTER & McKLEROY, and JOHN COCHRAN, *contra.*

[No briefs reached Reporter's hands.]

B. F. SAFFOLD, J.—The facts of this case may be stated as follows: The appellant, Thomas J. Cannon, being a dealer in cotton for speculation and profit, received from the Eastern Bank of Alabama, on the 21st of July, 1862, $12,359 in Confederate treasury-notes, as an advance on

two hunderd and twenty-nine bales of cotton. He left the cotton receipts in the possession of the bank, with authority to any agent of the bank to ship the cotton to Liverpool on his risk and account. It was then to be sold, and the net proceeds were to be applied to the payment of the advance and interest upon it to the date of the sale, estimating the pound sterling at $4.80.

On the 31st of August, 1862, he received from the bank the further sum of $41,095, in the same currency, on seven hundred and eleven bales, on like terms as the first.

On the 7th of August, 1865, Cannon executed a contract with John McNab, who was the president of the bank, by which he sold to McNab five hundred bales of cotton for $74,264.93. The consideration of this sale, as expressed in the contract, was, that McNab was to ship the cotton to Liverpool for sale. If the net proceeds of its sale there should over-pay the price above stated, with interest, insurance, and all other expenses added, in Liverpool funds, the excess was to be paid to Cannon. But if the amount realized should be insufficient to pay these several sums, Cannon was to make good the deficiency. McNab was authorized to sell the cotton in New York, if he preferred to do so, and in that event the currency received there was to be estimated at its value in Liverpool funds.

Cannon complains in his bill that so far from realizing the price expressed in his sale to McNab, which was really the amount of his indebtedness to the bank, and the interest, insurance and expenses, by a resale of the cotton, McNab claims a deficiency against him of over $31,000, and refuses to account to him for what he did with the cotton. He prays for a discovery and account.

The complainant further alleges, that all of these transactions on the part of the bank were done in violation of its charter, and by agreement with the rebel State of Alabama to give value and circulation to the Confederate treasury notes in aid of the late war against the Union. And, in reference to his sale to McNab in 1865, that the latter owns all of the stock of the bank, and is the bank.

Cannon v. McNab and the Eastern Bank.

A demurrer to the bill for want of equity, and on other grounds, was sustained.

The complainant states the facts of his case, and claims a discovery and account. It is with these that we have to deal. There is no doubt that the bank was forbidden by its charter and by the law of the land to circulate the treasury-notes of the Confederate States. So far as the violation of the charter is concerned, it does not follow that the circulation of these notes as money vitiated the contract between these parties.—*Harris v. Runnels*, 12 Howard, 79. The charter forbids the issuance, for circulation as currency, of any notes or bills not payable on demand. Section 935 of old Code declares, "Every bill of exchange, note, bond, or instrument of any description, whatever may be its form or device, issued with the intent to circulate the same as money, without authority of law, is an absolute, unconditional promise of the association, or person, putting such bill, note or other instrument in circulation, and may be sued on by the holder thereof, without transfer or assignment, and without demand, protest or notice, and the amount thereof recovered, with interest thereon, at the rate of fifty per cent. per annum, from the date thereof, or from the time the same was put in circulation."

On the other point, the ruling of this court has been that, while the loan of Confederate currency is not a sufficient consideration for a promise to pay money, contracts involving its use and circulation are not on that account void.—*Hale v. Houston, Sims & Co.*, 44 Ala. 134; *Herbert & Gessler v. Easton*, 43 Ala.

The contract between the complainant and McNab, made in 1865, seems to· be an ascertainment of the amount of the complainant's indebtedness, and a more definite expression of the manner in which it was to be paid. It is not an absolute, unconditional sale of the cotton, but is rather a mortgage of it with a power of sale, the mortgagee taking possession of the property for the purpose of sale. The complainant was deeply interested in the disposition to be made of the cotton.

The boundaries of equity jurisdiction in matters of account, cognizable at law, is not easily ascertained. Where a discovery is sought, and the discovery is effectual, that becomes a sufficient foundation upon which the court may proceed to grant full relief. When, as in this case, the account has equitable trusts attached to it, there is no doubt of the jurisdiction.—1 Story's Eq. Jur. §§ 454, 455, 456; 1 Story's Eq. Jur. § 64*k*, and notes; *Carlisle v. Wilson*, 13 Vesey, 278–9. We do not think that because our present law of evidence enables the plaintiff to examine the defendant as a witness, his right to proceed in equity is thereby taken away. Besides, as McNab became a trustee for the complainant in the care and disposition of the cotton, it can not be known until his answer comes in what relief the complainant may be entitled to.

The court erred in sustaining the demurrer.

The decree is reversed, and the cause remanded.

NOTE BY REPORTER.—An application for a rehearing was made in this case at the June term, 1871. It was denied at the present term. The application did not come into the Reporter's hands, and he is therefore unable to state the nature of it. Mr. Justice SAFFOLD delivered the following response to the application:

SAFFOLD, J.—We do not see the necessity for any further consideration of the matters involved in this case at this time. The attorneys on both sides are sagacious and discriminating, and we prefer to consider the issues which may arise on another trial after they have been argued.

The application is denied.