CARGILL & DENNIS v. KOUNTZE BROS.

No. 35.

## 1. Fraud — Trust — Discovery.

In cases of fraudulent conveyances equity will extend its aid to the creditor by entertaining a bill against the proper parties which points out the property and specifies the particulars in which the frand consists, and will, as in all other cases, grant a discovery as ancillary to the action........................................................ 395

## 2. Same—Cases Adhered to.

Cronin v. Gay, 20 Texas, 460; and Love v. Keowne, 58 Texas, 191, adhered to. The statute prescribes a mode of discovery as auxiliary to a regular suit, but not as an independent remedy. Bills of discovery were abolished by the enactment of statutory proceedings covering the subject....................................................... 395·

## 3. Bill for Discovery.

This court has never countenanced a proceeding to make the debtor apply his assets to the payment of a judgment against him, or to compel him to disclose his assets so that an execution may be levied, or a writ of garnishment served to reveal them. We are of opinion, that in the absence of a statute conferring authority for the proceeding, it should be held that none exists....................................... 396·

## 4. Re-enactment of Statute—Construction.

When the Legislature re-enacts a statute which has been construed by the courts, the presumption is that it intended that the new enactment should receive the same construction as the old. The rule applied to the construction of the Revised Statutes as applied to the case of Cronin v. Gay upon the subject of bills for discovery..................... 400·

ERROR to Court of Civil Appeals for First District, in a case from Harris County.

This was a suit by Kountze Bros., as creditors of Cargill & Dennis, to compel them to make discovery of their assets.

The District Court sustained a demurrer to the petition and dismissed the bill. On error the Court of Civil Appeals reversed the judgment.

On application to the Supreme Court for writ of error, it was urged as grounds for jurisdiction, that "it became necessary to the decision of said cause in said Court of Civil Appeals to determine the construction of section 8, article 5, of the Constitution of the State of Texas, as. amended September 22, 1891, to the facts alleged in said petition of said Kountze Bros., to which said demurrer in the trial court was sustained; and to determine, first, whether or not said provision of said Constitution, which gives jurisdiction to the District Courts 'over all causes of action whatever for which a remedy or jurisdiction is not provided by law or this Constitution,' did so retroact as to apply to said petition of Kountze Bros., which was filed in the court below on September 11, 1891; second, whether or not the relief prayed for in said petition was compatible with

our system of pleading and practice under the organic law, even as changed by said amendment; and, third, whether or not said constitutional amendment did in fact authorize the relief, or any part of the same, prayed for in said petition, or any relief whatsoever under the allegations therein contained."

*Goldthwaite & Ewing* and *H. F. Ring*, for plaintiffs in error.—1. There is no such thing as an inherent jurisdiction in any court not derived from the law of its creation, nor does the Constitution grant to the District Court every remedy that may have been administered by the chancery system of England, but only jurisdiction for relief where there is a suit with a matter in controversy amounting to $500. Here there is no pretense of controversy about the judgment, no matter in controversy of any value is alleged; only a fishing for a matter of some value or other. The petition invoked no jurisdiction lodged in the court by the organic law. Const., art 5, sec. 8; Messner v. Giddings, 65 Texas, 308.

2. The bill is one for discovery as an independent remedy. Such a bill never lay in the State courts of Texas, except in aid of a pending suit (Cronin v. Gay, 20 Texas, 460), and is now superseded entirely. Love v. Keowne, 58 Texas, 197. A bill very similar to the one in question was expressly characterized as an anomaly, and dismissed as such without demurrer, in Cronin v. Gay, 20 Texas, 461. See, also, Carter v. Hightower, 79 Texas, 135; Noyes v. Brown, 75 Texas, 458; Sewing Machine Co. v. Atkeson, 75 Texas, 330; Price v. Brady, 21 Texas, 614; Taylor v. Gillean, 23 Texas, 161; Donovan v. Fine, 1 Hopk. Ch., 59.

3. While a plaintiff with a suit involving matter in controversy of proper value may have any relief given in equity consistent with our system or policy of law, yet he can not invoke a remedy dependent solely upon the practice peculiar to chancery, of bill and specific answer, and which is utterly at war with our very system of practice, in which a plain, concise, positive statement of facts is required on the one side, and a general denial on the other. Such a remedy comes within the exception of grant of equity jurisdiction, because inconsistent with the policy of our system as existing under organic law from the earliest days. Newson v. Chrisman, 9 Texas, 117.

4. The statutes of attachment, garnishment (a mode of discovery), and execution purport to furnish a complete system for the forced collection of debts, and thereby repeal all laws on that subject. Rogers v. Watrous, 8 Texas, 62. Equity may supply remedial deficiencies in the unwritten law; but where positive law, enlarging the unwritten law on the subject, prescribes the remedy to be pursued for a given purpose, as the collection of debts, it is submitted that the courts will not add another remedy by supplemental proceedings, except where the positive law so provides, as it does in Illinois (Underwood's Statutes, 75), New York from a very

early day (Code of New York, section 292), California (California Code Civil Procedure, sections 714, 715), Ohio (sections 459, 460, Ohio Code Civil Procedure), Iowa (sections 3135–3138, Code of Iowa), South Carolina (Code Civil Procedure, section 318), Nevada (Compiled Laws of Nevada, section 1301), Wisconsin (Statutes, section 100), Indiana (Code, sections 518, 519), North Carolina (Code Civil Procedure, 264), and in Arkansas, Kentucky, Missouri, Maine, South Carolina, Oregon, New Jersey, and other States.

*Stewart & Stewart*, for defendants in error.—1. The District Court has original jurisdiction in civil cases of all suits, complaints, or pleas whatever, without regard to any distinction between law and equity, when the matter in controversy shall be valued at or amount to $500, exclusive of interest, and to hear and determine any cause which is or may be cognizable by courts either of law or equity, and to grant any relief which could be granted by said courts or either of them. Const., art. 5, sec. 8; Rev. Stats., arts. 1117, 1122; Smith v. Smith, 11 Texas, 105.

2. Whatever ordinary or extraordinary writ can be issued by a common law judge or chancellor in those States where the jurisdiction of these offices is separate and distinct, can in this State be issued by a district judge. Jones v. McMahan, 30 Texas, 728; Johnston v. Powell, 34 Texas, 529; Shulte v. Hoffman, 18 Texas, 678.

3. Whatever suits may be instituted in equity courts may be instituted in ours. The only inquiry to be made at the institution of a suit is whether the facts of the case are such as to entitle a party to judgment in his favor in law or equity; and if he have rights cognizable by either, such relief will be adjudged by the court as the nature of the case demands. The rule, that courts of equity will interfere only where the party is remediless at law, has but little application under a system in which the litigants in a suit can demand and obtain all the relief which can be granted by either courts of law or equity. Smith v. Clopton, 4 Texas, 113; Farrar v. Beeman, 63 Texas, 180; Grabenheimer v. Blum, 63 Texas, 373; Voigtlander v. Brotze, 59 Texas, 286; Douglas, Brown & Co. v. Neil & Co., 37 Texas, 547.

4. The giving of a remedy by statute in a court of law has never been deemed to take away or in any degree to abridge the original and inherent powers and jurisdiction of the Court of Chancery. Our courts, possessing the powers of courts of chancery, may proceed to administer relief upon the principles of equity as fully and completely as a court of chancery in England could do, without the aid of the statute. The foundation of the jurisdiction of equity is not in the statute, but in the judicial incompetency of the courts of common law to furnish a plain, complete, and adequate remedy. Grossmeyer v. Beeson, 18 Texas, 766; Duncan v. Magette, 25 Texas, 251; Castro v. Gentiley, 11 Texas, 28.

GAINES, ASSOCIATE JUSTICE. — This suit was brought by Kountze Brothers, alleging themselves to be creditors of Cargill & Dennis, to compel the latter to make discovery of their assets.

After stating that the plaintiffs had obtained a judgment against the defendants for $1054; that they had sued out executions which had been returned "no property found," and that they had caused an abstract of the judgment to be filed in the office of the clerk of the County Court of Harris County, so as to secure a lien upon the real estate of defendants in that county, they proceed in their petition to make the following allegations: "And your petitioners represent, that shortly before the recovery of said judgment against Cargill & Dennis, they, the said Cargill & Dennis, were, and for several years previous thereto had been and are now, engaged in divers money making and speculating enterprises and transactions; and your petitioners are informed and believe that in course of such business pursuits of the said Frank Cargill and E. L. Dennis, divers persons became indebted to them to a large amount, and that the defendants, Cargill & Dennis, have at the time of filing this, your petitioners' bill of complaint, debts due to them, and for which they hold divers securities and evidences, to a large amount, and have divers goods, wares, and merchandise or other articles of personal property which belong to them or in which they are in some way beneficially interested, and that they have equitable interests and things in action of some kind or nature, which might or ought to be applied to the payment of your petitioners' said judgment against them, the defendants, Cargill & Dennis.

"And your petitioners further represent, that the defendants, Frank Cargill and E. L. Dennis, more especially E. L. Dennis, are owners of or in some way or manner beneficially interested in some real estate in this or some other State or Territory, or some chattels real of some name or kind, or in some contract or agreement relating to real estate, or rents or issues and profits of some real estate; and also, that the defendants are the owners of or in some way or manner beneficially interested in the stock of some company, incorporated or unincorporated, or in the profits of some company or copartnership; and also, that they have in their possession at the time of the filing of this, your petitioners' bill of complaint, some money or bank bills; or that they have money deposited in some bank or elsewhere to their credit; or that they have money or securities for the payment of money held by some other person, in trust or otherwise, for their benefit. And if the defendants, Frank Cargill and E. L. Dennis, have made any sale or assignment of their property or effects, or any part thereof, your petitioners expressly charge that they believe that such sale, transfer, or assignment is merely colorable, and made with the view of protecting the property or effects of the defendants so assigned, and placing the same beyond the reach of your petitioners' said judg-

ment, and to enable the defendants to control and enjoy the same and the avails thereof, and that it would so appear if the defendants, Frank Cargill and Edward L. Dennis, would state and set forth when and to whom such sale, transfer, or assignment was made, and what was the amount in value of the property and effects assigned, sold, or transferred, and what were the terms and conditions upon which such sale, transfer, or assignment was made, and what disposition had been made of the property or effects so sold, transferred, or assigned, and in whose possession the same is now, or what has been done with the avails thereof.

"And your petitioners claim a full discovery and complete disclosure of all such property and effects and things in action belonging to the defendants, Cargill and Dennis; and all trusts whereby any property, debts, or other effects are held for the use and benefit of the defendants, Frank Cargill and Edward L. Dennis; and of every sale, transfer, or assignment which defendants have made of their property, debts, or other effects; and of the person or persons to whom such assignment, sale, or transfer has been made; the amount and value of the property, debts, or effects so assigned, sold, or transferred, and the trusts or other conditions upon which said sale or assignment or transfer was made; and all the facts and circumstances relating thereto; and particularly what is the situation of the property, debts, or other effects assigned or transferred at the time of the filing of this, your petitioners' bill of complaint.

"And your petitioners further represent, that they have reason to believe, and so charge the fact to be, that the defendants have property, debts, and other equitable interests, things in actions or effects of the value of more than $1054, interests and costs, exclusive of all prior just claims thereon, and which your petitioners have been unable to reach by execution on said judgment against said defendants, Cargill & Dennis; and that this, your petitioners' bill of complaint, is not exhibited by collusion with the defendants or with any other person; or for the purpose of protecting the property or effects of the defendants, Frank Cargill and Edward L. Dennis, against the claim of other creditors, but for the sole and only purpose of compelling payment and satisfaction of the judgment so as aforesaid recovered by your petitioners against the defendants, Frank Cargill and Edward L. Dennis."

The petition concludes with a prayer that each of the defendants be required to disclose under oath all their assets of every description whatever, and that they also be required to answer certain special interrogatories which are set out therein.

The trial court sustained a demurrer to the petition and dismissed the suit. The plaintiff having sued out a writ of error, the Court of Civil Appeals reversed the judgment and remanded the cause. The case came to us upon a writ of error from this court to the Court of Civil Appeals.

*Opinion.*—We are of the opinion that the District Court was correct, and that the Court of Civil Appeals erred in its ruling.

Broad expressions of eminent text writers would seem to sanction this proceeding. We think, however, the propositions announced by them are not supported by the cases cited, except in a restricted sense. Mr. Freemen, in enumerating " the objects which may be accomplished by proceedings in equity to obtain satisfaction of a judgment at law," says: " 1. A full and complete discovery may be obtained of all the defendant's assets, and when discovered they may be compelled to contribute to the payment of the plaintiff's judgment." 2 Freem. on Ex., sec. 424. A review of the cases cited by the learned author will show that none of them can be held a precedent for a general bill of discovery like that under consideration.

The first is Creswell v. Smith, 8 Lea, 688. Its nature is shown by the following quotation from the opinion: "The bill must therefore be regarded as filed against the defendant Smith alone, and the question is, can it, in this view, be maintained ? The question is a new one in this State, so far as I know, and merits, as I think, a very careful consideration. It will be observed that it is not a bill for the purpose merely of compelling the defendant to discover generally whether he owns property, money, or effects for the payment of his debts, in the nature of a 'fishing bill.' It is true there is a prayer that the defendant be required to discover whether he owns any property or stock or choses in action of any character; but the stating part of the bill points out specificially the property about which the discovery is specially sought, and states circumstantially the information upon which it is charged that the defendant owns the property. If the right to discovery and relief in this particular property can be maintained, then that the prayer of the bill is too broad would not be material. We think the prayer is too broad, but that part should be rejected." The opinion then proceeds to hold, that the jurisdiction of the court to entertain the bill should be upheld as to the property specifically pointed out, by virtue of the authority conferred by the statute of the State.

Carter v. Hampton's Administrators, 77 Virginia, 631, was a bill brought by the creditor of a decedent against the administrators and heirs, to compel a discovery of assets belonging to the estate. Thomas v. Adams, 30 Illinois, 37, and Clark v. Webb, 2 H. & M., 8, are cases of the same character. It is well established, that such a bill may be maintained, as we shall hereafter show.

Gordon v. Lowell, 21 Maine, 251, was a suit to set aside a fraudulent conveyance of certain property specifically described, and to subject it to the payment of the complainant's debt.

Love v. Getsinger, 3 Halsted Chancery, 191, was a bill filed under the provisions of the New York statute.

Miers v. Zanesville, etc., Company, 11 Ohio, 273, was a proceeding against a corporation for the discovery of assets, and specifically pointed out the assets in reference to which the discovery was sought. Among other things, it sought to subject unpaid subscriptions to the capital stock to complainant's debt, which is a well recognized ground for equitable interference.

Cadwallader v. The Granville Society, 11 Ohio, 278, was a suit to subject the defendant's interest in a specific tract of land, upon the ground that the interest was equitable and not subject to sale under execution.

Goss v. Lester, 1 Wisconsin, 43, was an action to set aside fraudulent conveyances.

Hocker v. Robson, 8 Rhode Island, 141, was a bill filed by certain creditors against the assignees of their debtor, to recover a surplus of assets in their hands, and for an account. It gives no countenance to the proceeding in the present case.

Hendricks v. Robinson, 2 Johnson Chancery, 283, was a suit to set aside certain fraudulent conveyances specifically described. We fail to see that Kimberly v. Sells, 3 Johnson Chancery, 467, also cited by Mr. Freeman, has any application whatever to the doctrine announced by him.

In Boden v. Dellon, 1 Atkinson, 289, the bill was filed by the assignee of a bankrupt, suspected of having concealed his assets, against himself and certain relatives, to compel a discovery. The case involved both fraud and trust, and the proceeding was probably specially authorized by statute. The report of the case is very meagre.

The case of Leroy v. Rogers, 3 Paige Chancery, 234, would be authority in support of the petition in the present case, were it not for the fact that at that time the statutes of New York expressly authorized the proceeding. A careful reading of the opinion will show that it involved the construction of a statute.

Mr. Pomeroy says: "Creditors' suits were therefore permitted to be brought in those instances where the relief by execution at common law was ineffectual; as for the discovery of assets," etc. 3 Pome. Eq. Jur., sec. 1415. In support of this proposition some of the authorities already reviewed are cited. The additional authorities we will now proceed to consider.

Hadden v. Spader, 20 Johnson, 554 (same case under name of Spader v. Davis, 5 Johnson Chancery, 280), was a suit by judgment creditors against their debtors and the assignee of a stock of goods alleged to have been fraudulently transferred to him by such creditors, to subject the goods or their proceeds to the payment of the judgment. A discovery was prayed, and answers having been filed, the case was discussed and determined upon the question of the right to subject the proceeds of the property to the payment of the debt.

Bay State Iron Company v. Goodall, 39 New Hampshire, 223, was a.

case like the present.    But it is apparent from the opinion that there was.
a statute of the State of New Hampshire which authorized the proceeding,
although the court say the remedy exists in equity without the statute.
The main authority cited to support the last proposition is Leroy v.
Rogers, supra, which we have seen was a proceeding under the Revised
Statutes of the State of New York.

In Trego v. Skinner, 42 Maryland, 427, the complainant, a judgment,
creditor, sought to subject real estate alleged to have been paid for by
their debtor, and to have been conveyed to his wife, to the satisfaction of
their judgment.    A discovery was also prayed as to other assets fraudu-
lently concealed by the debtor and by a firm of which he was a member.
The court held that a demurrer to the bill was properly overruled.    The
bill was certainly good in part, and the decision of the court was correct.
The expressions in the opinion show that the court were also of the
opinion that the bill was good as to the discovery, but for this they cite
no authority.

In Bispham's Equity, page 572, in speaking of creditors' bills, it is said:
" They may also be made use of for the purpose of obtaining discovery
of the debtor's property."    The only case cited in support of the text is
Newman v. Willetts, 52 Illinois, 98, which was merely a proceeding to
set aside a fraudulent conveyance of certain real estate belonging to the
debtor, and to subject it to the payment of complainant's debt.

In the latest edition of Story's Commentaries on Equity Jurisprudence,
it is to be noted that the editor, in a note, says, " that a creditor who has
exhausted his remedy at law may maintain a bill for discovery of assets
and relief."    2 Story Eq. Jur., 13 ed., sec. 1493, note b; citing 44 N. H.,
541.    We have already seen that the remedy was authorized by the stat-
utes of New Hampshire.    The text of the work, so far as we have been
able to see, does not lay down that doctrine; and it is a little remarkable
that if the Court of Chancery had authority to entertain a bill by a judg-
ment creditor merely to discover the assets of his debtor, that so import-
ant a doctrine should have escaped the scrutiny of that able and learned
commentator.

Turning to the English authorities, we find in Spence's Equitable
Jurisprudence of the Court of Chancery a section upon the subject of
" Suits in Chancery by Creditors," in which the author says:    " The
jurisdiction of the ecclesiastical court being, as before mentioned, defect-
ive in the case of creditors, rendered it necessary to resort to the Court
of Chancery, which court required not only the executor or administator
to swear to his accounts, but supplying the defects of the ecclesiastical
law, allowed the creditor to contest it.    The court also decreed payment
of the debt, where there were assets, and which the Court of Chancery by
its process for obtaining discovery was enabled effectually to ascertain.
Suits of this description and proceedings upon them are found in the

calendars from the reign of Edward VI downward. The court was neces-
sarily resorted to in order to recover merely equitable demands, as when
a creditor sought to enforce an equitable security not giving any legal
title, and in which therefore there was no remedy at law, or when the
debtor had conveyed or devised his property in special trust for the pay-
ment of his debts." 2 Spencer's Eq. Jur., 580.

In Adams' Equity also, the doctrine of the right of the creditor of an
estate to file a bill in the Court of Chancery to compel the executor or
administrator to disclose the assets is distinctly recognized. Adams' Eq.,
257.

But neither of these authors anywhere recognize the right of a judg-
ment creditor to compel his debtor by a bill of discovery to make a dis-
closure of the property owned by him. We have been cited to no English
case in which the Court of Chancery ever exercised such a jurisdiction,
and we have found none. And it may be doubted if there be any well
considered case in the American courts in which a discovery of that char-
acter has been compelled, in the absence of a statute conferring the au-
thority.

Every original bill in equity, according to the practice of the Court of
Chancery, is a bill of discovery. Story on Eq. Plead., sec. 311. They
are usually bills of discovery and relief; that is to say, they pray the
court to grant some relief, and as an aid thereto, they seek to purge the
conscience of the defendant in order to establish some fact necessary to
be proved as a basis for the decree.

But a bill for discovery merely does not pray a decree. It is brought
in aid of a pending action at law, or of a suit at law to be brought in or-
der to procure evidence.

Judge Story says: "The bill should set forth the particular matters
to which the discovery is sought, for the other party is not bound to
make answer to vague and loose surmises. On this account, when a bill
of discovery was brought by an executrix, stating generally that a de-
mand had been made upon her as executrix by the defendant, which she
had refused to pay, and he had sued her therefor; and that the executrix
knew nothing of the demand of her own knowledge, but believed it to
be unjust, because the defendant took no measures to liquidate it in the
testator's lifetime, and did not produce any vouchers; and that she could
not, without a discovery of all the facts, safely proceed to a trial at law
in the suit, and prayed a discovery; it was held, that the bill was bad
and a mere fishing bill, amounting only to a statement that the executrix
was sued at law, and did not show for what, and therefore asked a
discovery beforehand, although she had reason to conclude that the suit
was upon some groundless pretense." Story on Eq. Plead. sec. 325.

The petition in the present case, although it has the semblance of great
particularity, is in effect as general as it is possible to make it. It seems

to us to amount to no more than an allegation that the defendants have concealed or covered up somewhere some assets, legal or equitable, subject to be applied to the satisfaction of plaintiffs' judgment, which they have been unable to discover.

The authorities we have considered indicate to our minds that such a proceeding was not allowable under the English equity practice. It is provided for by statute in many of our States, and many cases may be found where the jurisdiction was exercised by virtue of such statutes. Bills against executors for a discovery of assets and against assignees for account and discovery were frequently entertained in the Court of Chancery. These all involved a trust. In cases of fraudulent conveyances equity will extend its aid to the creditor by entertaining a bill against the proper parties, which points out the property and specifies the particulars in which the fraud consists, and will as in all other cases grant a discovery as ancillary to the action. In this case there is no trust—there is the simple relation of debtor and creditor. The bill alleges a surmise of fraud, but specifies none.

Cronin v. Gay, 20 Texas, 460, was a case somewhat like this. The court, in its opinion, characterized the proceeding as anomalous, and held that the suit could have been properly dismissed without motion or demurrer. The court also say: " Our statute has prescribed a mode of discovery as auxiliary to a suit, but not as an independent remedy disconnected from a regular suit." This remark was pertinent to the question before the court, if not indispensable to its decision.

In Love v. Keowne, 58 Texas, 191, Mr. Justice Bonner says: "Although a bill of discovery, technically so called and known in equity practice, is not known to our practice, yet we have a statute which is intended to answer the same purpose. * * * In Cronin v. Gay, 20 Texas, 460, it is decided, that the statute prescribes this mode of discovery as auxiliary to a regular suit, but not as an independent remedy disconnected from such suit."

Our statutes have largely extended the legal remedies of judgment creditors, as recognized at common law.. Under execution they may levy upon and sell the interest of the defendant, whether legal or equitable, in both his real and personal property. They may subject by process of garnishment his choses in action and his shares in incorporated companies to the satisfaction of their judgment.

But we have held that equity will not aid the writ of garnishment. Noyes v. Brown, 75 Texas, 458.

In Price v. Brady, 21 Texas, 614, it was decided that promissory notes could only be subjected to the payment of a judgment by a writ of garnishment served upon the makers; that they could not be sold under execution, and that therefore an agent holding them for collection could not be made liable by the writ of garnishment. And it seems to us the gen-

eral trend of our decisions is to confine creditors to their statutory reme-dies, and not to aid them in a court of equity, except in cases of trusts and frauds.

Our courts will at the instance of a creditor set aside a fraudulent conveyance of a debtor, so as to subject the property to sale under execution, and to enable the creditors to realize at such sale a fair price. But this court has never countenanced a proceeding to make the debtor apply his assets to the payment of a judgment against him, or to compel him to disclose his assets, so that an execution may be levied or a writ of garnishment served to reach them; and we are of opinion that in the absence of a statute conferring authority for the proceeding, it should be held that none exists. Many of the States have statutes authorizing bills of discovery in cases like the present. It is in the power of our Legislature to make such a law, and it must be left to its wisdom to determine whether or not it is proper to confer this inquisitorial power upon the courts of the State.

For the reasons given, the judgment of the Court of Civil Appeals is reversed and that of the District Court is affirmed.

*Affirmed.*

Delivered June 24, 1893.

### ON MOTION FOR REHEARING.

*Stewart & Stewart,* for motion for rehearing.—In defendant in error's brief in the Court of Civil Appeals we cited numerous authorities, showing that our District Courts had full equity powers and could give a creditor seeking its aid any remedy that a court of chancery in England could, and we refer the court to. brief filed. The court now holds, that only in cases of estates of deceased persons, and where there was a trust, or to set aside a fraudulent conveyance, could the remedy we seek be maintained in a court of chancery. The court admits that Freeman, Pomeroy, Bispham, and Story in their works sanction such a proceeding, but differ with those learned law writers in their construction of the province of a court of equity. In our brief we did not deem it necessary to show many authorities that this proceeding could be maintained in an English court of chancery. We took it for granted that the court would not deny that, and only undertook to show that the action could be maintained in our own District Courts. Because cases cited in the equity reports are mostly against the estate of a deceased person or a trust fund, the court has fallen into the error that it only applied in such cases. It is a general rule, that to reach the equitable interest of a debtor in real estate by suit in chancery, the creditor should first obtain a judgment at law; and to reach personal property, both a judgment and execution should be shown. One exception to this rule is where the debtor is deceased; an-

other exception is where the claim is to be satisfied out of a fund accessible only by aid of a court of chancery. Russell v. Clark, 7 Cranch, 69; Brinkerhoff v. Brown, 4 Johns. Ch., 671; O'Brien v. Coulter, 2 Blackf., 421; Cloud v. Hamilton, 3 Yerg., 81; Rhodes v. Cousins, 6 Rand., 188.

In instances of claims against trust funds and deceased debtors, the creditor went at once into a court of chancery, without waiting to exhaust legal remedies, and as a result the cases in regard to such matters are much more numerous; but there is no decision of the English Court of Chancery that the action now before the court can not be maintained. * * * The power of a court of equity is broad and far reaching, and does not allow technicalities to prevent it from striking down fraud and tearing away the veil that hides it.

Where a bill seeks a discovery of fraud or of fraudulent acts of the defendants, if they do not subject him to criminal proceedings, he is bound to make the discovery. Jansen v. Solarte, 2 Younge & Coll., 132, 136; Hare on Discovery, 140, 142; Green v. Weaver, 1 Sim. R., 404, 427, 432; Story Eq. Plead., sec. 589, and note; Robinson v. Robinson, 35 Eng. L. and E., 558.

It is unquestionable that chancery will decree a discovery to detect fraud and imposition. Bennett v. Musgrove, 2 Ves. Sr., 51; Bickwell v. Gough, 3 Atk., 558; Kimberly v. Sells, 3 Johns. Ch., 467, 471; Earl of Deloraine v. Brown, 3 Bro. C. C., 633; Mitchell v. Harris, 2 Ves. Jr., 129; Lord Lonsdale v. Littledale, 2 Ves. Jr., 451; King v. Morton, 3 Ves. Jr., 641.

"Courts of chancery decreed payment of debt, and by its process for obtaining discovery it was enabled effectually to ascertain assets." Suits of this description, and proceedings upon them, are found in the calendars from the reign of Edward VI downward. 1 Spence's Equitable Jurisdiction of the Court of Chancery, 579; 1 Cal., 93; Eliz. Cary, 11. A bill of this nature lies, it seems, against third persons for the discovery of moneys paid after notice of a sequestration. Simmonds v. Lord Kinnaird, 4 Ves., 735. So it lies for a discovery of concealments of a bankrupt's estate. 1 Atk., 289. It lies also against assignees to discover a fraudulent bankruptcy to defeat the plaintiff's execution. King v. Martin, 2 Ves., 641. Such a bill lies by the Attorney-General against an outlaw, to discover his real and personale state (Hard., 22 Eq. Ca. Abr., 75 S. C.), or by the patentee of the goods of a felon, or one outlawed. Cary. Rep. 1, 21; Hard., 22; 2 Fonblanque's Treatise on Equity, 481. Judgment creditors have a right to a discovery where the creditor's real or personal property is, in order to make their judgments available. Mountford v. Taylor, 6 Ves., 792.

If A obtains a judgment against B and takes out execution, and gets it returned nulla bona, he may bring a bill against the defendant, or any other, to discover goods or personal estate of B, and by that means

to effect the same.    Balch v. Wastall, 1 P. Wms. Rep., 445; Smithier v. Lewis, 1 Vern., 399.

In the case of Mitchell v. Bunch, 2 Paige Chancery, 606, it is stated, that independent of the statute the court had jurisdiction to compel a debtor, whose body is exempt from execution at law, to discover his property, so that it may be applied in satisfaction of his just debts, and cites in approval the decision of Lord Hardwicke in Edgell v. Haywood & Dawe, 3 Atk., 352.  " Where certainty wanteth the common law faileth, but yet help is to be found in chancery for it."   36 Hen., 26; Cary, 21.  This was a rule governing the practice of courts of chancery, yet this court has rendered its opinion in direct opposition to the practice of these courts.   If defendants knew specifically and particularly where all the property of plaintiffs in error was situated, and the condition of same, an execution would be the remedy, and no need would be required of the assistance of a court of equity.

In regard to form of bill, as being too vague and indefinite, we refer to Barbour's Chancery Practice, 38; Puterbaugh's Equity Pleading; Story's Pleading, and all works on equity practice.

GAINES, ASSOCIATE JUSTICE.—Counsel for defendants in error, in support of their motion for a rehearing in this case, have filed an able and learned argument, supported by an ampler citation of authority than was contained in their original brief.   At the time the former opinion was delivered, the text books exclusively devoted to the law of " Discovery " were not at our command.   This probably arose from the fact that it was thought that the rules in regard to discovery had been substituted by statutory enactment, and that the learning upon that subject had become in a measure obsolete.   Since the filing of this motion we have procured the authorities necessary to enable us to make an exhaustive examination of the question, with the result, that we deem it proper to modify some expressions in the former opinion without changing our disposition of the case.

In Hare on Discovery, chapter 5, section 1, page 80, it is laid down, that a discovery is given only in aid of some trial.   But in a succeeding section (3, page 84) that author says:  " There are some early cases which appear opposed to the rule which has been stated in the preceding sections, that a discovery will only be given to be used as evidence at a trial."   The text is mainly predicated upon a case in Cary Reports, page 21, the name of which is not given; upon The Protector v. Lumley, Hardwicke, 22, and upon Mountfort v. Taylor, 6 Vesey, 788.

The Protector v. Lumley and the case in Cary were bills for the discovery of the goods of an attainted felon, which had been forfeited to the crown in the one case; and for the goods of an outlaw, which had been forfeited to the commonwealth in the other.   The origin and nature of

that jurisdiction is explained by Reeves, in his History of English Law, as follows: ''A grant was made by letters patent of goods forfeited by a person attainted; the grantee brought his bill in chancery against the person who had possession of them, for this reason, that as the king could not have an action at law for the goods of an outlaw or one attainted before they had been seized for the king's use or found by a matter of record, much less could the grantee without having had the possession. Accordingly it was held, the subpœna was his only remedy, and the defendant was ordered to exhibit an inventory of the things the next day, on pain of being committed to the fleet.'' 2 Reeves' Hist. Eng. Law, 602.

In Mountfort v. Taylor, Lord Elden granted a discovery in aid of an elegit; but from the report of the case we have but little doubt in our minds.

In Equity Cases Ab., 132, the case of Taylor v. Hill is thus reported: '' The plaintiff having recovered judgment against J. S. (but no writ of execution sued out), supposing some particular effects of J. S. to be in defendant's hands, brought a bill to discover them, in order to subject them to his judgment. The defendant demurs, because there is no equity to compel such a discovery, and no such bill would lie against the debtor himself, much less against a third person. My lord keeper seemed to agree it would not lie against the debtor himself, nor to have a general discovery from a third person, but only for particular things, as this bill was, and overruled the demurrer.'' This would seem to indicate that the court was of opinion that no bill of the character would lie except to discover property specifically described, though it admits of the construction that the demurrer may have been urged upon the ground that no execution had been sued out. We note in this connection, that the bill was very similar to the petition in Cronin v. Gay, 20 Texas, 460, in which it was held expressly that bills of discovery had been abolished in this State.

These authorities seem to us to leave the matter in doubt; and there, as an original question of equity jurisdiction, we are content to leave it. We have commented upon the cases merely for the purpose of modifying our former opinion, in so far as the intimation may be drawn from it that no case can be found in the English courts which gives color of authority to the proceeding instituted in this case.

If the courts of equity in England ever entertained bills of discovery of this character, and if the jurisdiction became incorporated into our system of jurisprudence by the adoption of the common law, we are still of opinion that it is no longer the law of this State. Neither the decisions of the English courts upon the effect of their statutes, which allow a discovery in the courts where the suits are pending, nor the decisions of the courts of other States upon similar statutes, can be taken as a guide in determining the effect of our own laws upon the subject. There is an

apparent conflict of authority in our State courts. Some hold merely that statutes which permit the parties to testify, or which allow interrogatories to be filed to the opposite party, do not take away the jurisdiction of courts of equity to compel a discovery. Shotwell v. Smith, 20 N. J. Eq., 79; Edison v. Hughes, 1 Head (Tenn.), 223; Russell v. Dukesheid, 2 W. Va., 61; Cannon v. McNab, 48 Ala., 99; Millsapp v. Pfeiffer, 44 Mass., 805. In all of these States the separate jurisdiction of the law and equity courts is maintained. The contrary is held in Missouri, where the courts exercise both law and equity jurisdiction (Bond v. Worley, 26 Missouri, 251); and in Hurd v. Bank, 1 Morris (Iowa), 291; and in Reoppelli v. Doellner, 26 Michigan, 102, where the jurisdictions were separate. See, also, 9 Blatch., 316.

Not only was law and equity blended into one system of jurisprudence by our statutes at the same session of the Congress of the Republic at which the common law was adopted, but at the same time a system of procedure was established, which is borrowed from the practice both of the courts of law and those of equity, as recognized at common law. Writs peculiar to courts of equity were prescribed for by statutory regulation, and at an early day provision was made by statute for the perpetuation of testimony, and for the discovery of evidence in a pending suit by simply filing interrogatories to the opposite party, the answers to which had the effect of an answer under oath to a bill in equity. At a later day, it was provided as a cumulative procedure that either party to a suit could take the deposition of the adverse party.

The effect of our statutory system was passed upon in Cronin v. Gay, supra, and it was held that bills of discovery were thereby abolished. This decision was doubtless well known to the able lawyers who compiled our Revised Statutes, and yet all the provisions of the old statutes in regard to the law of evidence were incorporated in that revision without change. See Report of Commrs., 2 Sayles' Ann. Stats., 726.

When the Legislature re-enacts a statute which has been construed by the courts, the presumption is that it intended that the new enactment should receive the same construction as the old. The rule is universal, and is conclusive of the question under consideration. If, however, the question were one of first impression, we see no good reason which would impel us to a different conclusion.

The motion for a rehearing is overruled.

Delivered February 5, 1894.