————————o————————

HENDERSON ET AL. *v.* THE STATE.

CONSTITUTIONAL LAW.—*License of Brokers.*—The amended act of March 7th, 1857 (Acts 1857, p. 89), concerning the granting of licenses, is a new act under its own title, and not a part of the act of June 15th, 1852, 1 G. & H. 424.

SAME.—The subject of said act of 1857 is that of licenses, and it is not unconstitutional as containing more than one subject.

BROKER.—*Definition.*—A broker is a mere negotiator between other parties, and does not act in his own name, but in the name of those who employ him.

SAME.—*Corporation.*—A corporation does not become a broker by transacting for itself the business which its charter authorizes it to do, and the president and directors of such corporation, in doing and directing the business of such corporation, are not liable to the penalty prescribed for a failure to take out a broker's license.

From the Marion Criminal Circuit Court.

*C. Baker, O. B. Hord,* and *A. W. Hendricks,* for appellants.

*C. A. Buskirk,* Attorney General, *R. D. Doyle,* and *J. M. Cropsey,* Prosecuting Attorney, for the State.

DOWNEY, J.—This was an indictment against the appellants, William Henderson, Aquilla Jones, Sr., Oliver Tousey, Patrick Jameson, John R. Elder, Thomas A. Morris, Samuel Delzell, William Wallace, and John H. Stewart, charging as follows:

" The grand jurors for the county of Marion, and State of Indiana, upon their oath present that William Henderson," etc., naming the other defendants, " on the 1st day of January, A. D. 1874, at and in the county of Marion and State

aforesaid, did, unlawfully, from said 1st day of January, 1874, continually until the 1st day of January, 1875, at said county and State, engage in and carry on the business of stock and exchange brokerage, by then and there, and during all of said time, buying and selling stocks, bank-notes, gold, silver, promissory notes, and bills of exchange, the said Henderson," etc., " then and there not having procured a license to carry on said business at said county, during said time, from the auditor and treasurer of said county, or from either of said officers; contrary to the form of the statute in such case made and provided, and against the peace and dignity of the State of Indiana."

No question is made as to the sufficiency of the indictment.

Upon arraignment and plea of not guilty, there was a trial by the court, a finding against the defendants, a motion for a new trial made by each of them overruled, and judgment for the State.

The overruling of the motion for a new trial is the only error properly assigned. The grounds of the motion are stated thus:

" 1. Because the finding of the court is contrary to law; and,

" 2. Because the finding of the court is contrary to the evidence."

The facts were agreed upon, and are set out in the bill of exceptions as follows: " It is agreed by and between the State of Indiana and the defendants in the above entitled cause, that the facts of this case are as follows: That the defendants were, during the year 1874, the Directors of the Indianapolis Insurance Company, and the defendant Henderson was the president of said company, all duly elected and qualified; that said Indianapolis Insurance Company is a corporation, with its office and place of business situated at the city of Indianapolis, and county of Marion, State of Indiana, and was so during the year 1874; that said Indianapolis Insurance Company was organized and exists, and did exist during the year 1874, under and by virtue of certain legislation of the General Assembly of

said State, and a copy of the charter is attached as part of the agreement; that during the whole of the year 1874 said Indianapolis Insurance Company did, at said county of Marion, and State aforesaid, engage in and carry on the business of buying and selling bank-notes, gold, silver, promissory notes, and bills of exchange; that said business was carried on by said company by and through the defendants as its president and directors, by the authority of and under the legislation aforesaid, and in performing and executing the powers granted in said charter; that said defendants did not, during said year, nor did either of them, engage in said business during said year, either jointly or severally, except as president and directors of said company, as hereinbefore stated; that said defendants did not, nor did either of them, nor did said Indianapolis Insurance Company, have any broker's license for the year 1874, or any part thereof, as provided for by the act of the General Assembly of said State, entitled 'an act concerning licenses to vend foreign merchandise, to exhibit any caravan, menagerie, circus, rope and wire dancing, puppet show, and legerdemain,' approved June 15th, 1852, and the act amendatory thereof, entitled 'an act to amend the first section of an act, entitled "an act concerning licenses to vend foreign merchandise, to exhibit any caravan, menagerie, circus, rope and wire dancing, puppet show, and legerdemain," approved June 15th, 1852, and for the encouragement of agriculture, and concerning the licensing of stock and exchange brokers,' approved March 7th, 1857. It is further agreed, that upon the trial of said cause this agreed statement of facts shall be taken as constituting the evidence in said cause.

"JAMES M. CROPSEY,

"Prosecuting Attorney.

"BAKER, HORD & HENDRICKS,

"For defendants."

Section 25, 2 G. & H. 465, one of the sections in question, is as follows: "Every person who shall, by himself or agent, transact any business, or do any act, without a license therefor, when such license is required by any law of this State, shall

be fined not exceeding two hundred dollars, and in all such cases where the principal may be prosecuted, his agent may be compelled to testify, and when the agent is prosecuted, the principal may be compelled to testify."

The act requiring the license, as is contended, is the act of June 15th, 1852, 1 G. & H. 424, as amended in the Acts of 1857, p. 89 (act March 7th, 1857). Although licenses to brokers were mentioned in the body of the act of June 15th, 1852, they were not mentioned in the title of that act. The title of the act of March 7th, 1857, is as follows :

"An act to amend the first section of an act, entitled ' an act concerning licenses to vend foreign merchandise, to exhibit any caravan, menagerie, circus, rope and wire dancing, puppet show, and legerdemain,' approved June 15th, 1852, and for the encouragement of agriculture, and concerning the licensing of stock and exchange brokers."

The question arises, whether the amended act, that of March 7th, 1857, becomes a part of the original act, that of June 15th, 1852, under its defective title, or whether it is a new act under a new title. We think it is a new act under its own title. The legislature did not attempt to amend the title alone by making it broad enough to cover the part of the original section 1 relating to brokers. But it re-enacted the first section, adding a second and a third section thereto, and making for the act a new and enlarged title. It is urged that if this is the view to be taken of the new act and its title, then there is more than one distinct subject in the title, and the whole act is therefore unconstitutional, according to sec. 19, art. 4 of the state constitution. It was decided in *The State* v. *Bowers*, 14 Ind. 195, that the subject of the act is licenses, and that it is not unconstitutional for containing more than one subject. We adhere to this ruling.

It is next urged that there is no evidence showing that the appellants were brokers ; that whatever was done by them was done as president and directors of the insurance company acting for the corporation, and not for another person or with the property of another ; that a broker is one who is engaged for

others in the negotiation of contracts relative to property, with the custody of which he has no concern.

The third section of the act of incorporation of said insurance company is as follows:

" That it shall be lawful for said company to invest any part of their capital stock, money, funds, or other property in stocks or funded debts created or to be created by or under any law of the United States, or of this or any other particular state, or in stock of any chartered bank of the United States or any branch thereof; and the same to sell and transfer at pleasure, and again to invest the same or any part thereof in such stock or funds whenever and as often as the exigencies of said corporation, or a due regard to the safety of its funds, may require, or they may loan the same or any part thereof to individuals or corporations on real or personal security for such periods of time and under such restrictions and limitations and upon such terms as the directors thereof for the time being shall deem prudent and best for the interest of said company ; that the office of the Indianapolis Insurance Company be and the same is hereby made an office of discount and deposit, and are hereby authorized to deal in exchange and the discount of promissory notes, and to receive cash and the bank bills of any incorporated bank on deposit, for such time and on such interest as may be agreed on, and to discount or loan the same upon such terms and upon such rate of interest as may be agreed upon between said company and the person or persons, company, or corporation discounting or borrowing the same, not exceeding the rate of interest individuals are allowed by law to receive : Provided, however, that all deposits made in said office shall be refunded and paid by said corporation on demand in specie or its equivalent, except where special deposits are made, which shall be refunded and paid as agreed upon ; and provided, also, that it shall not be lawful for said corporation to issue or emit any bills of credit, or any bills payable to order or bearer as a circulating medium of trade or exchange, nor in any manner engage in the business or operation of banking otherwise than as aforesaid."

What was done and is relied upon as showing the guilt of the defendants is thus stated in the agreement of facts, " That during the whole of the year 1874, said Indianapolis Insurance Company did, at said county of Marion and State aforesaid, engage in and carry on the business of buying and selling bank-notes, gold, silver, promissory notes, and bills of exchange; that said business was carried on by said company by and through the defendants as its president and directors, by the authority of and under the legislation aforesaid, and in performing and executing the powers granted in said charter."

Judge Story says: " The true definition of a broker seems to be, that he is an agent, employed to make bargains and contracts between other persons, in matters of trade, commerce, or navigation, for a compensation, commonly called brokerage. Or, to use the brief but expressive language of an eminent judge, ' A broker is one, who makes a bargain for another, and receives a commission for so doing.' Properly speaking, a broker is a mere negotiator between the other parties, and he never acts in his own name, but in the name of those who employ him. Where he is employed to buy or to sell goods, he is not intrusted with the custody or possession of them, and is not authorized to buy or to sell them in his own name. He is strictly, therefore, a middle-man, or intermediate negotiator between the parties; and for some purposes (as for the purpose of signing a contract within the statute of frauds) he is treated as the agent of both parties," etc. Story Agency, sec. 28.

It seems to us pretty clear, that the agreed statement of facts does not show that any act or acts were done by the defendants as brokers.

The act requires the license, whether the business be carried on by " individuals or corporations;" but this does not change the case. A corporation may do business for other persons, and thereby become a broker in this sense, but does not become a broker by transacting for itself the business which its charter authorizes it to do. A corporation can no more become a

broker by transacting business for itself than can a natural person.

The judgment is reversed, with costs, and the cause remanded, with instructions to grant a new trial.

Petition for a rehearing overruled.