## SAN JACINTO LIFE INS. CO. v. BROOKS et al. (No. 11185.)

(Court of Civil Appeals of Texas. Fort Worth. May 30, 1925.)

**1. Injunction ⬅118(2)—Petition to enjoin insurer from paying part of premium to local agents held insufficient as showing no contractual relation between plaintiffs and insurer.**

Petition to enjoin life insurance company from transferring premium note or paying local agents any part of premium paid by insured, introduced by plaintiffs to such agents in consideration of latters' agreement to divide their portion of premium with plaintiffs, held insufficient, as evidencing no contractual relation of plaintiffs as agents or representatives of insurer, their position being no better than that of broker.

**2. Brokers ⬅2—"Broker" defined.**

A "broker" is a mere negotiator, whose business it is to bring buyer and seller together, and he does not act in his own name.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Broker.]

**3. Injunction ⬅118(2)—Petition to enjoin insurer from paying commission to local agents, agreeing to divide with plaintiffs introducing insured, should affirmatively show that plaintiffs were authorized to act as brokers.**

It should affirmatively appear from allegations of petition to enjoin life insurance company from transferring premium note or paying local agents any part of premium paid by insured, introduced to them by plaintiffs in consideration of agents' agreement to divide commission with plaintiffs, that latter were authorized to solicit insurance and act as brokers, as required by Penal Code 1911, arts. 642, 689.

**4. Injunction ⬅118(4)—Petition to enjoin insurer from paying commissions to local agents, agreeing to share with plaintiffs, held insufficient as not showing inadequacy of legal remedies.**

Petition to enjoin life insurance company from transferring premium note or paying any part of premium to local agents, who agreed to divide their share with plaintiffs in consideration of latter introducing insured to them, held insufficient as not showing that company knew of such agreement and accepted note without plaintiffs' knowledge and acquiescence, that premium included agents' commissions, or, if so, was due, or that plaintiffs could not im-

---

pound sum by garnishment proceedings or execution against insurer's property.

Appeal from District Court, Tarrant County; R. E. L. Roy, Judge.

Suit by G. V. Brooks and another against the San Jacinto Life Insurance Company and others. From an order granting a temporary injunction, the named defendant appeals. Reversed, writ vacated, and cause remanded.

Oliver J. Todd, of Beaumont, for appellant.

Burns, Christian, Gumm & Gordon, of Fort Worth, for appellees.

CONNER, C. J. This is an appeal by the San Jacinto Life Insurance Company from an order of the district court of the Seventeenth judicial district granting a temporary writ of injunction. The writ was granted upon the petition therefor on the 2d day of August, 1924, without notice and without a hearing. It is evident, therefore, that the question of whether the court's order shall be set aside is dependent upon the allegations of the petition for the writ. The petition was duly verified by one of the appellees on the 2d day of August, 1924, and reads as follows:

"In the District Court of Tarrant County, Texas, Seventeenth Judicial District.

"To the Honorable R. E. L. Roy, Judge of the Said Court:. Come now G. V. Brooks and W. T. Blakeney, hereinafter styled plaintiffs, complaining of San Jacinto Insurance Company, J. F. Thomas, and J. L. Godchaux, hereinafter styled defendants, and for cause of action would show to the court:

"(1) That plaintiffs are resident citizens of the county of Tarrant, state of Texas; that the defendant San Jacinto Life Insurance Company is a corporation heretofore duly and legally incorporated, having its principal offices and place of business in Beaumont in Jefferson county, Texas, and that the defendants J. F. Thomas and J. L. Godchaux are resident citizens of Tarrant county, Tex.

"(2) That heretofore, to wit, on or about the 1st day of May, 1924, the plaintiffs, who were then engaged in the insurance business in the city of Fort Worth, Tex., as insurance agents and solicitors, made an agreement and contract with the defendants J. F. Thomas and J. L. Godchaux, by the terms of which the said defendants, in consideration of the fact that the plaintiffs introduced to the said defendants one Brooks Thompson, who was an applicant for life insurance, and in consideration of the plaintiffs' placing the said defendants in touch with the said Brooks Thompson, who was, an applicant for life insurance, the said defendants, who were then the local agents in Fort Worth, Tex., for the defendant San Jacinto Life Insurance Company, agreed with plaintiffs that they, the said defendants, would divide with plaintiffs the agent's portion of the premium to be paid by the said Brooks Thompson for the said insurance if he should make an application to the said San Jacinto Life Insurance Company and said application should be accepted. The defendants agreed to pay plaintiffs for the said consideration, two-thirds of the agent's part of said premium.

"(3) That the defendant San Jacinto Life Insurance Company was at that time, and is now, an insurance corporation engaged in the business of writing life insurance, and that the defendants J. F. Thomas and J. L. Godchaux were the local agents of the San Jacinto Life Insurance Company in Fort Worth at said time, authorized to bind the said insurance company in transactions such as the said transaction between plaintiffs and the defendants, and that by the said defendants J. F. Thomas and J. L. Godchaux, acting as agents for the defendant San Jacinto Life Insurance Company the said life insurance company became bound and obligated to pay plaintiffs two-thirds (⅔) of the agent's portion of said premium.

"(4) That by said agreement two-thirds (⅔) of said premium was assigned to plaintiffs, and plaintiffs became the assignees and owners of two-thirds (⅔) of the agents' portion of said premium, and all of the defendants herein became jointly and severally liable to plaintiffs for said portion of said premium.

"(5) That thereafter, the said Brooks Thompson made an application for an insurance policy in the sum of $100,000 to the said defendant San Jacinto Life Insurance Company, and said application was accepted by said company, and the policy of said company for $100,000 upon the life of said Brooks Thompson was issued by the said insurance company and delivered to the said Brooks Thompson; that two-thirds (⅔) of the agent's portion of the premium for said life insurance amounts to $2,050, to which amount plaintiffs became entitled by reason of said agreement, and by reason of the issuance of said life insurance policy to said Brooks Thompson.

"(6) That the defendant San Jacinto Life Insurance Company accepted from said Brooks Thompson his promissory note, payable to the order of said life insurance company for the amount of said premium, and plaintiffs have an interest in said note to the extent of $2,050, the portion of said premium to which plaintiffs are entitled.

"(7) That the defendants J. F. Thomas and J. L. Godchaux are not in possession of property over and above exemption sufficient to satisfy plaintiffs' said claim against said defendants, and if the agent's portion of said premium should be paid by said San Jacinto Life Insurance Company to said defendants, or if the said note of Brooks Thompson to said life insurance company should be transferred and negotiated, pledged or hypothecated by said life insurance company, then, in any of said events, plaintiffs would suffer an irreparable injury, for which they would have no adequate remedy at law.

"(8) That defendant San Jacinto Life Insurance Company has heretofore been notified by plaintiffs of plaintiffs' interest in said premium and in said note, and plaintiffs have made a demand upon each and all of said defendants for their proportionate part of said premium, but defendants, and each of them, have heretofore failed and refused and still fail and refuse to pay plaintiffs their said portion of said premium or any part thereof, to plaintiffs' damage in the sum of $2,050.

"Wherefore, premises considered, plaintiffs pray for the issuance by this court of a writ

of injunction, enjoining and restraining the defendant San Jacinto Life Insurance Company from paying to the defendants J. F. Thomas and J. L. Godchaux, or either of them, any part of said premium until otherwise directed by this court, and restraining and enjoining the defendant San Jacinto Life Insurance Company from transferring, negotiating, pledging, or hypothecating the said promissory note of Brooks Thompson to said company until otherwise directed by this court, and that upon final hearing of this case the said injunction be made permanent, and plaintiffs pray for the issuance of citation for the defendants to appear and answer herein and upon final hearing of this cause for judgment against said defendants, jointly and severally, for $2,050 interest, and cost of suit, and for such other and further relief, both special and general, in law and equity, to which plaintiffs may be justly entitled."

[1, 2] The petition evidences no contractual relation as agents or representatives of appellant insurance company. On the contrary, accepting the allegations of the petition, J. F. Thomas and J. L. Godchaux were the local agents of the appellant company. Those local agents are the ones who accepted the application of the insured, transmitted that application to the appellant company, and for the appellant company delivered the policy of insurance to the insured. The position of appellees in relation to this transaction cannot be given greater dignity than that of a broker. A broker is a mere negotiator between other parties, and does not act in his own name. Henderson v. State, 50 Ind. 234. Brokers are persons whose business it is to bring buyer and seller together; they need have nothing to do with negotiating the bargain. Keys v. Johnson, 68 Pa. 42. In Black's Dictionary, under the head of "Broker," it is said that insurance brokers are those "who procure insurance for those who employ them, and negotiate between the parties seeking insurance and the companies as their agents."

In Cooley's Briefs on Laws of Insurance, vol. 1, page 68, it is said:

"An insurance broker is ordinarily one who is engaged in the business of procuring insurance of such persons as apply to him for that service. He is therefore usually the agent of the insured, and will be so considered, though a statute may declare that whoever in any manner aids or assists in making a contract of insurance on behalf of any insurance corporation or property owner shall be held to be an agent of the corporation for all intents and purposes."

The same author, in volume 2, page 917, says:

"A broker who procures insurance is a mere 'go-between,' and is not liable for a premium on a policy procured by him for another, unless he acts under a del credere commission."

[3] Such being the position of appellees in relation to the transaction detailed in the petition, appellant invokes, as one objection to its sufficiency, articles 642 and 689 of our Penal Code, which read as follows:

Article 642: "If any person shall transact the business of life, fire or marine insurance in this state, either as agent, solicitor or broker, without his, or the company or association he represents, first obtaining a certificate of authority therefor from the commissioner of insurance and banking, he shall be punished by fine not less than five hundred nor more than one thousand dollars, and by imprisonment in the county jail not less than three nor more than six months."

Article 689: "Any person who, for direct or indirect compensation, solicits insurance, in behalf of any company, or transmits for a person other than himself, an application for a policy of insurance to or from such company, or assumes to act in negotiation of insurance without a certificate of authority to act as agent or solicitor for such company, or after such certificate of authority shall have been canceled or revoked, shall be guilty of a misdemeanor, and, upon conviction, shall be punished by a fine of not less than one hundred dollars."

The statutes indicate that it is the legislative policy of this state to require either an agent, solicitor, or broker, before transacting the business of life, fire, or marine insurance, to obtain a certificate of authority therefor, and it is nowhere alleged in plaintiff's petition that appellees, by certificate, as required in the articles of the penal code quoted, were authorized to transact business as insurance brokers.

In the case of Craig v. State of Missouri, 4 Pet. 410, 7 L. Ed. 903, the Supreme Court of the United States, in discussing the consideration of a note involved in the controversy, among other things, stated the general doctrine thus:

"It has been long settled, that a promise made in consideration of an act which is forbidden by law is void. It will not be questioned, that an act forbidden by the Constitution of the United States, which is the supreme law, is against law. * * * It has never been doubted, that a note given on a consideration which is prohibited by law, is void."

In the case of Converse v. Miller, 33 Tex. 219, the same general principle was announced in the following language:

"There can be no binding contract, express or implied—no obligation, stipulating for iniquity, as all contracts are regarded, which are in violation of positive law, however dim and shadowy may be the moral turpitude involved in them. The courts will not lend their aid to any party who bases his cause of action upon any illegal act. The moral maxim of the law is, 'no polluted hand shall touch the pure fountain of justice.'"

See, also, Republic Trust Co. v. Taylor (Tex. Civ. App.) 184 S. W. 772, where a corporation sold stock on credit in violation of the law, and it was held that a note given for the stock was illegal and void even in the hands of an innocent purchaser.

Appellees answer that it does not appear from their petition that they "had not obtained the permit required by the statutes of the state of Texas, and therefore the said petition does not show that appellees were acting unlawfully, or that the contract set up by them was illegal."

In the case of Emde v. Johnson (Tex. Civ. App.) 214 S. W. 575, writ of error refused, in an opinion by Mr. Justice Buck, the following is said:

"In a petition for injunction, the averments of material and essential elements must be sufficiently certain to negative every inference of the existence of facts under which petitioner would not be entitled to relief. Gillis v. Rosenheimer, 64 Tex. 246; Birchfield v. Bourland (Tex. Civ. App.) 187 S. W. 422."

In the case last cited, Birchfield v. Bourland, this court, in an opinion by Mr. Justice Dunklin, quoted with approval the following from Gillis v. Rosenheimer, 64 Tex. 246:

"The rule is correctly stated in Harrison v. Crumb, 1 White & W. Civ. Cas. Ct. App. § 992, as follows: 'The rule of pleading, that the statements of a party are to be taken most strongly against himself, is reinforced in injunction suits by the further requirement that the material and essential elements which entitle him to relief shall be sufficiently certain to negative every reasonable inference arising upon the facts so stated, from which it might be deduced that he might not, under other supposable facts connected with the subject, thus be entitled to relief.' See Carter v. Griffin, 32 Tex. 212; Martin v. Sykes, 25 Tex. Supp. 197; Forbes v. Hill, Dallam, Dig. 486; Ballard v. Rogers, Dallam, Dig. 460; Smith v. Frederick, 32 Tex. 256."

Applying the rule of construction indicated by these authorities, we think it should affirmatively appear from the allegations of plaintiffs' petition that, in soliciting the insurance and in acting as brokers, as they did, they were authorized to so do under our laws, thus negativing an easily supposable state of facts, which would defeat the right they assert.

[4] Appellant makes yet another objection to the court's order, which is perhaps of more force than that which we have just discussed. In the case of G., C. & S. F. Ry. Co. v. Shields, 56 Tex. Civ. App. 7, 120 S .W. 222, by the Austin Court of Civil Appeals, writ of error refused, it was said, quoting from the headnote: "It is always necessary to exhaust all legal remedies before an injunction will be granted."

In Frazier v. Coleman, 111 S. W. 662, it was said by the Dallas Court of Civil Appeals, quoting from the headnote that: "An injunction will not be granted where the law provides a full, complete, and adequate remedy."

The same general principle has been recognized by this court. See, Mercer v. Fitzhugh, 261 S. W. 819.

In Long v. Smith, 39 Tex. 161, it was held, in effect, that the equitable remedy of injunction cannot be substituted for the legal remedy of appeal. The same principle was announced by the Texarkana Court of Civil Appeals in the case of Turner v. Patterson, 54 Tex. Civ. App. 581, 118 S. W. 565, and by this court in Eppler v. Hilley (Tex. Civ. App.) 166 S. W. 87, and Race v. Decker, 214 S. W. 709. In the case of Kyle v. Richardson, 31 Tex. Civ. App. 101, 71 S. W. 399, by this court, writ refused, it was held that a failure to pursue a remedy by appeal or certiorari gives no right to substitute a suit by injunction. In Cargill v. Dennis, 86 Tex. 386, loc. cit. 395, 22 S. W. 1015, 1019 (24 L. R. A. 183, 40 Am. St. Rep. 853), it was said that:

"Our statutes have largely extended the legal remedies of judgment creditors, as recognized at common law. Under execution they may levy upon and sell the interest of the defendant, whether legal or equitable, in both his real and personal property. They may subject by process of garnishment his choses in action and his shares in incorporated companies to the satisfaction of their judgment."

With the principle announced by the foregoing cases in mind, we think appellees' petition fails to show that they are entitled to the remedy of injunction. They allege that the agreement for the division of commissions was made with Thomas and Godchaux, appellant's agents. There can be no pretense that the petition shows that, at the time of the agreement, the appellant company had any knowledge thereof. It is alleged, however, that said agents were authorized to make such agreement. Assuming for the purposes of argument that the company could so empower its local agents, the effect of the agreement would be merely to create the relation of debtor and creditor between the insurance company and appellees. It is not alleged that the appellant company is insolvent, and no reason is assigned why, if an indebtedness on the part of the insurance company exists, appellees may not pursue the legal remedy of suit and judgment, followed by an execution. It is alleged that the company accepted the promissory note of insurance for the first premium, but it is not alleged that this was not done with the knowledge and full acquiescence on the part of appellees, nor is it alleged, except possibly by inference, that the first premium included the commissions due from the company to its local agents, or that they had not in fact been paid their commissions. But if it be assumed that the note included the commissions due the local agents under the terms of their agreement with the insurance company, and that by virtue of the transaction plaintiffs became in equity part owners of the note, and the insurance company thus retained control of the commissions, it would follow that no legal demand therefor could be made until the note by its terms was due and collectable and in fact collected. The petition

fails to state the due date of the note. The petition alleges that the insurance company was given notice of the agreement upon which appellees rely, and should the insurance company collect the note in question and fail to pay appellees the proportion of the commissions to which it is alleged they are entitled under their agreement, then no reason appears why appellees may not impound the sum to which they are so entitled, if at all, by pursuing the legal remedy of garnishment, or, as just indicated, by instituting suit upon their demand, recovering judgment, and satisfying the same by execution against the property of the insurance company not alleged to be insolvent.

We conclude that upon no theory of the case as presented by the petition were appellees entitled to the writ of injunction, and it is accordingly ordered that the judgment below be reversed, the writ of injunction vacated, and the cause remanded for further proceedings not inconsistent with this opinion.